UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-00075-FDW

| | |
|---|---|
| DAVID ELI BURTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| SCOTT ALLEN, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court upon Plaintiff David Eli Burton's pro se Amended Complaint (Doc. No. 7) and Defendants' Motion for Summary Judgment (Doc. No. 21).

**I.    BACKGROUND**

Plaintiff was detained at the Buncombe County Detention Facility ("BCDF" or "Facility") beginning on July 27, 2016, while he awaited disposition of felony charges in Buncombe County Superior Court and felony charges in Henderson County Superior Court. He began serving an active sentence at the BCDF in October 2016 after being found guilty of the Henderson County felonies.[1] Plaintiff was released from BCDF custody on July 5, 2017. (Wilhelm Aff. ¶ 5, Doc. No. 21-1).

On March 10, 2017, Plaintiff filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) He filed an Amended Complaint on May 7, 2017, naming the following as Defendants: (1) Scott Allen, identified as the official responsible for operation of the BCDF; (2)

---

[1] The Court presumes Plaintiff began serving his sentence for the Henderson County convictions at BCDF because he was still awaiting disposition of his Buncombe County cases.

1

FNU Barber, identified as a shift lieutenant at the BCDF; (3) FNU Wilhelm, identified as a shift lieutenant; (4) FNU Woods, identified as a shift lieutenant; (5) Van Duncan, identified as the Sheriff of Buncombe County; and (6) the Buncombe County Detention [Facility]. (Doc. No. 7.) Plaintiff alleges that between November 8, 2016, and November 22, 2016, he made eight requests for legal research, but was only provided research for two of the requests because jail policy limits inmates to two legal research requests a month. Petitioner asserts that, as a consequence, he missed important pre-trial motions deadlines and was unprepared to make intelligent decisions about his defense. (Am. Compl. ¶ 12.) Petitioner alleges further that between November 22, 2016 and the filing of his Amended Complaint, he was denied basic "legal tools," such as paper, pencils, stamps, and notary services, which rendered him unable to challenge the legality of prior convictions in two other counties. (Am. Compl. ¶ 13.) (Collectively, hereinafter "access to court" claim).

Additionally, Plaintiff alleges he was denied access to counsel for the 30 days he was in segregation because he had to get permission from jail officers to telephone his attorney. (Am. Compl. ¶ 25.) He claims more generally that he was denied access to counsel due to jail policy limiting inmates to one "public [defender] envelope" per week, for which he had to pay. (Am. Compl. ¶ 14.) ("Access to counsel" claims). Plaintiff further alleges he was routinely denied grievance forms in retaliation for filing grievances. (Am. Compl. ¶ 15.) (First Amendment retaliation claim). Finally, he alleges he was routinely denied medical treatment for his Hepatitis C, dental treatment for his painful, decaying teeth, and prescription eye glasses. (Am. Compl. ¶¶ 16-18.) (Eighth Amendment claims).

Because Plaintiff is proceeding pro se, the Court conducted an initial review of the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2). (Doc. No. 9.) The Court dismissed the

Buncombe County Detention [Facility] as a defendant because it is not a distinct legal entity capable of being sued, nor is it a "person" within the meaning of 42 U.S.C. § 1983. See Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 688 & n.55 (1978) (noting that, for purposes of § 1983 action, a "person" includes individuals and "bodies politic and corporate"); FED. R. CIV. P. 17(b). Otherwise, the Court concluded the Amended Complaint survived initial review.

The remaining defendants have filed a Motion for Summary Judgment, provided first names for Defendants Barber, Wilhelm, Woods, and Van Duncan, and clarified that the proper surname for Defendant Van Duncan is simply "Duncan." (Doc. No. 21 at 1.) Attached to the Motion are affidavits of Defendant Wilhelm, Defendant Woods, and April Stroupe, Clinical Site Director for the BCDF, as well as BCDF records of Plaintiff's medical treatment, legal research requests, and disciplinary sanctions for hoarding medicine and trading food, a copy of Plaintiff's January 24, 2017 "Sanctioned Inmates Property Form," and copies of BCDF's official policies regarding Access to Legal Assistance, Inmate Mail, Non-Emergency Medical Care and Grievance Policy. (Doc. Nos. 21-1 through 21-3.)

In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court entered an Order, notifying Plaintiff of his right to respond to Defendants' summary judgment motion and his responsibilities under Federal Rule of Civil Procedure 56. (Doc. No. 22.) The Court provided Plaintiff fourteen (14) days to respond to Defendants' Motion.

The Clerk of Court placed a copy of the Court's Roseboro Order in the U.S. Mail on January 6, 2018. It was mailed to Plaintiff at the address he provided on August 18, 2017 (Doc. No. 18). As of the date of this Order, Plaintiff has not responded to Defendants' Motion for Summary Judgment, and the Roseboro Order mailed to Plaintiff has not been returned as "undeliverable." Consequently, the Court finds Plaintiff has declined to respond to Defendants'

3

Motion.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fec. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. " 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.' " Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff claims violations of his right of access to the courts, right of access to counsel, First Amendment right to petition the government free from retaliation, and Eighth Amendment right to be free of cruel and unusual punishment based on deliberate indifference to his serious medical needs. He is suing Defendants in both their individual and official capacities.

### A. Individual Liability

Individual liability under § 1983 must be based on personal participation in the constitutional violation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature). To establish individual liability under § 1983, Plaintiff must affirmatively show that each named Defendant acted personally in depriving him of his constitutional rights. Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal citations omitted); Garraghty v. Commonwealth of Virginia, Department of Corrections, 52 F.3d 1274, 1280 (4th Cir. 1995). Plaintiff also must show each Defendant acted directly, not indirectly, in the deprivation of his rights. West v. Atkins, 815 F.2d 993, 996 (4th Cir. 1987), rev'd on other grounds, 487 U.S. 42 (1988).

For a supervisor to be personally liable, then, a plaintiff must show that the supervisor "acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). A supervisor can be liable under a theory of supervisory liability only when: (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or

tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff has failed to allege any facts showing how Defendants Allen, Barber, Wilhelm or Duncan personally participated in violating any of Plaintiff's constitutional rights. In other words, he has not identified what each of these Defendants did personally to deprive him of his right to access the courts, right of access to counsel, First Amendment right to petition the government free from retaliation, or Eighth Amendment right to be free from cruel and unusual punishment. Merely alleging that Defendants are being sued in their individual capacity, without any factual basis to support such a claim, is not sufficient to state a claim against Defendants in their individual capacities. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (a plaintiff's complaint must allege "more than an unadorned, the defendant–unlawfully–harmed–me accusation" (internal citation omitted)).

Nor has Plaintiff alleged any facts to showing these Defendants may be personally liable under a theory of supervisory liability. The Court need look no farther than the fact Plaintiff has not alleged any of these Defendants knew a subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." See Shaw, 13 F.3d at 799 (setting out the three requirements to prove supervisory liability). Accordingly, Defendants Allen, Barber, Wilhelm, and Duncan are entitled to summary judgment with respect to all of Plaintiff's claims based upon individual liability.

Additionally, Plaintiff has failed to allege any facts showing how Defendant Woods personally deprived him of his right of access to counsel, First Amendment right to petition the government free from retaliation, or Eighth Amendment right to be free from cruel and unusual

punishment. Nor, for the reasons stated above, has Plaintiff shown Defendant Woods may be personally liable under a theory of supervisory liability. Therefore, Defendant Woods may not be held individually liable for alleged violations of Plaintiff's right of access to counsel, First Amendment right to petition the government free from retaliation, or Eighth Amendment right to be free from cruel and unusual punishment, and he is entitled to summary judgment on these individual capacity claims. See Aschcroft, 556 U.S. at 678.

### B. Access to the Courts

Liberally construed, the only individual capacity claim arguably raised in the Amended Complaint is against Defendant Woods for violating Plaintiff's right of access to the courts. (Am. Compl. ¶ 12.) Plaintiff alleges that on November 7, 2016, he was indicted as an habitual felon in Buncombe County. He alleges further that between November 8, 2016, and November 22, 2016, he made eight requests for legal research related to his Buncombe County charges but was only provided research for two of the requests because BCDF policy limits inmates to two legal research requests a month. When he complained to Defendant Woods on November 22, 2016, about the six requests not being filled, Defendant Woods took the unfilled requests and assured Plaintiff they would be filled. Plaintiff contends he never received the legal research for those six requests. (Am. Compl. ¶ 12.) According to Plaintiff,

> delays like this . . . has caused me to miss important pre-trial motion deadlines and has caused me not to be prepared to make inteligent decisions regarding my defence. This has forced me to remain in custody here rather than [Department of Public Safety] forcing me to max out an existing sentence costing me 60 irreplacable days of my life.

(Am. Compl. ¶ 12) (misspellings in original).

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not

7

abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977). The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.

To make out a prima facie case of denial of access to the courts, an inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis, 518 U.S. at 353 (1996). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. at 355.

If, however, a pre-trial detainee alleging denial of access to the courts due to lack of access to a law library or inadequate legal resources has an attorney or is offered counsel but waives his or her right to counsel, he or she has no constitutional right of access to a law library or to legal research materials. See United States v. Chatman, 584 F.2d 1358, 1360 (4th Cir. 1978). Although he was serving an active sentence for his Henderson County convictions, Plaintiff was a pre-trail detainee with respect to his unresolved Buncombe County charges; by his own admission, he was represented by counsel on those charges, and the eight legal research requests made between November 8 and November 22, 2016 were related to those charges. (Am. Compl. ¶ 12). In addition, Plaintiff fails utterly to explain how Defendant Woods'

8

failure/refusal to fill six of the research requests forced him to remain in custody at BCDF rather than being transferred to NCDPS and forced him to "max out an existing sentence costing him 60" irreplaceable days of his life. See Cochran, 73 F.3d at 1310 (a prisoner making a claim that prison officials infringed his right of access to the courts cannot rely on conclusory allegations).

Petitioner also alleges that between November 22, 2016 and the filing of his Amended Complaint on May 8, 2018, he was denied basic "legal tools," such as pen and paper to draft legal documents, notarial services to authenticate documents, and stamps to mail them. Plaintiff has failed to identify any direct action Defendant Woods took to deny him access to the aforementioned "legal tools."

Furthermore, Defendant Wilhelm has submitted an affidavit swearing that Plaintiff had access to paper, writing implements, notarial services and envelopes, for which the jail provided postage. Wilhelm also swears that indigent inmates like Plaintiff could obtain packages containing paper, a writing utensil, and three (3) envelopes once a week at no cost. (Wilhelm Aff. ¶ 10.) Plaintiff has not presented any evidence contradicting Wilhelm's affidavit. See Fed. R. Civ. P. 56.

Additionally, during the period alleged in the Amended Complaint Plaintiff managed to hand-write at least seven grievances (Compl. 1, Doc. No. 1), hand-write a four-page Complaint and mail it to this Court, hand-write a three-page verification of exhaustion of his administrative remedies and mail it to this Court (Doc. No. 4), and hand-write his ten-page Amended Complaint and mail it to this Court (Doc. No. 7). Thus, Plaintiff clearly had access to at least one writing implement and enough postage to mail documents to the Court. Notably, Plaintiff did not file either his Complaint or his Amended Complaint on the forms approved for use in this Court; he wrote his pleadings on plain, lined paper.

Finally, Plaintiff was placed in segregation in January 2017.  His property form, dated January 24, 2017, shows Plaintiff possessed, among other things, nine packages of legal mail, miscellaneous papers, a pen, and two pencils.  (Wilhelm Aff. Ex. C, Doc. No. 21-1.)

In fact, Plaintiff does not identify a single instance in which he was denied access to paper, writing implements, notarial services or stamps, except during his 30 days of segregation.  However, he complains only that he was denied access to counsel during that period, not that he was denied access to the courts because of a lack of "legal tools."  Based upon the evidence before it, the Court finds Plaintiff's allegations he was denied "legal tools" frivolous.

In sum, Plaintiff has failed to state an individual capacity claim against Defendant Woods for violating his right of access to the courts.  See 28 U.S.C. § § 1915(e)(2).  Defendant Woods is entitled to summary judgment on this claim.

### C.  Official Capacity

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is *not* a suit against the officer personally, for the real party in interest is the entity."  Graham, 473 U.S. at 166 (emphasis in original).  Defendants assert that the relevant "entity" for the purposes of Plaintiff's official capacity claims is the Buncombe County Sheriff's Office.

A municipal government entity is not liable for the acts of its employees through a theory of *respondeat superior*.  Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 470 (4th Cir. 2013).  Instead, a municipality only faces liability "when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury.'"  Id. (quoting Monell, 436 U.S. at 694).  Liability can attach to the government entity for a policy or custom in any of the following four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). When trying to impose liability based on the existence of a policy, the plaintiff must demonstrate that the policy actually caused the constitutional violation in the case at hand. See City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989). "Thus, not only must there be some degree of 'fault' on the part of the [governmental entity] in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation." City of Oklahoma City v. Tuttle, 471 U.S. 808, 820 (1985); McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1198 (4th Cir. 1996).

Construed liberally, the Complaint claims Plaintiff was denied access to the courts because of a jail policy limiting legal research requests to two a month (Am. Compl. ¶ 12) and denied access to counsel because of a jail policy limiting "public [defender] envelopes" to one a week, for which he had to pay $1.95 (Am. Compl. ¶ 14).[2] Regardless of whether such policies existed, Plaintiff cannot demonstrate that he suffered a constitutional violation because of them.

As already explained, because he was a pretrial detainee who was represented by counsel, Plaintiff had no constitutional right of access to a law library or to legal materials, such as the type of legal research he sought from the BCDF. See Chatman, 584 F.2d at 1360. Furthermore, Plaintiff's assertion that he was denied access to counsel because he had to pay for a particular

---

[2] Even construed liberally, the Complaint does not raise claims that Plaintiff was denied access to counsel while in segregation, denied grievance forms, or that jail personnel were deliberately indifferent to his serious medical needs based upon an official or unofficial policy.

11

kind of envelope is frivolous.  Nothing in the Constitution endows pretrial detainees or inmates with the right to an unlimited supply of free envelopes, whether they are used for legal mail or not.

The uncontroverted evidence before this Court is that because he was indigent, Plaintiff could obtain packages containing paper, a writing utensil, and three (3) envelopes once a week at no cost.  (Wilhelm Aff. ¶ 10.)  While they may not have been the type of envelope Plaintiff preferred, he does not allege anything prevented him from using them to correspond with his attorney.  Moreover, jail policy permitted Plaintiff to telephone his attorney any time phone use was permitted.

In sum, Plaintiff has failed to state a cognizable official capacity claim based on alleged violations of his rights of access to the courts or to his attorney.  Indeed, the Complaint does not state any cognizable official capacity claim, and Defendants therefore are entitled to summary judgment.

**D.  Merits**

The Court also concludes that all of Plaintiff's claims should be denied on their merits.  The uncontroverted evidence submitted by Defendants shows that Plaintiff's allegations that he was denied access to the courts, access to counsel, and grievance forms in retaliation for filing grievances and that Defendants were deliberately indifferent to his serious medical needs are frivolous.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. 21) is **GRANTED**;

2. Plaintiff's Amended Complaint (Doc. No. 7) is **DENIED with prejudice** as frivolous and for failure to state a claim upon which relief may be granted, see 28

U.S.C. §§ 1915(e)(2); and

3. The Clerk of Court is directed to amend the docket to reflect the correct first names of Defendants Barber, Wilhelm, Woods, and Van Duncan as they are spelled in Defendants' Motion for Summary Judgment.

**SO ORDERED.**

Signed: September 4, 2018

Frank D. Whitney
Chief United States District Judge